1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   VASHON TYRONE JACKSON,

11          Petitioner,                        No. CIV S-00-0274 LKK EFB P

12          vs.

13   CALIFORNIA DEPARTMENT OF                            ORDER and
     MENTAL HEALTH; JOHN DeMORALES,        FINDINGS AND RECOMMENDATIONS
14   EXECUTIVE DIRECTOR; CALIFORNIA
     ATTORNEY GENERAL,
15
            Respondents.
16   _____/

17          Petitioner is a state prisoner proceeding with counsel on an application for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his confinement pursuant to

19   California's Sexually Violent Predator Act, California Welfare and Institutions Code §§ 6600 *et*

20   *seq.*, on the ground he was not lawfully in custody when the initial commitment petition was

21   filed.  The U.S. Court of Appeals for the Ninth Circuit remanded this matter with instructions

22   that this court determine whether petitioner has standing to bring this action.  *Jackson v.*

23   *California Department of Mental Health*, 399 F.3d 1069, *amended on denial of rehearing*, 417

24   F.3d 1029 (9th Cir. 2005).

25   ////

26   ////

                                                 1

Although respondents summarily concede petitioner has standing, the undersigned has considered the expanded record and applicable law in order to provide an analysis responsive to the Ninth Circuit's remand order.  Pursuant to this analysis, the undersigned recommends a finding that petitioner does have standing to pursue the merits of this action.

**I.**

**BACKGROUND**

On June 15, 1993, petitioner pled guilty to felony petty theft with a prior conviction pursuant to Cal. Penal Code § 666.  *See* Petitioner's Opening Brief Regarding Standing ("POB"), Exh. 1.  A sentence of one year and four months was imposed.  *Id.*  The record is unclear when petitioner was released on parole but he was arrested on August 29, 1995, and his parole revoked on September 13, 1995.  *See* Appendix to Habeas Petition ("App.") at 044.[1]  Petitioner was scheduled for release on February 25, 1996.  *Id.* at 044, 001.

In anticipation of the January 1, 1996 implementation of California's Sexually Violent Predator Act ("SVPA" or "Act"), the California Department of Corrections (now the California Department of Corrections and Rehabilitation) and the Board of Prison Terms ("BPT") screened petitioner's record to determine whether he was eligible for confinement under the Act based on prior rape convictions.  *See* App. at 001-035*;* Cal. Welf. & Inst. Code § 6601.  Pursuant to its completion of a "Potential Sexually Violent Predator Pre-Screening Form" on November 30, 1995, and a "Sexually Violent Predator Record Review Form" on December 26, 1995, the BPT concluded that petitioner was "likely to be a sexually violent predator" and referred him to the California Department of Mental Health ("DMH") for evaluation.  App. at 001, 002; Cal. Welf. & Inst. Code § 6601(b).  Petitioner was clinically evaluated by two psychologists, on January 29 and February 20, 1996, respectively, both of whom concluded petitioner met the criteria for

---

[1]  The documents contained in the Appendix to petitioner's habeas petition ("App.") bear different Bates-stamp numbers than those imprinted on the same documents in the Clerk's Transcript on Appeal ("CT").  Parallel citations are not provided.

1   confinement under the Act.  *Id.* at 003, 020-027, 028-035*;* Cal. Welf. & Inst. Code § 6601(c)-(g).

2       Meanwhile, on January 26, 1996, BPT placed an anticipatory three-day hold on

3   petitioner's release, from February 25 to February 28, 1996.  App. at 045.  On February 27,

4   1996, pursuant to hearing, BPT concluded there was probable cause to commence civil

5   commitment proceedings against petitioner under the Act and placed him on a 45-day hold (until

6   April 12, 1996).  App. at 006-008, 046, 012-013.  The legal authority for these holds is disputed.

7   On February 29, 1996, BPT transferred petitioner to Atascadero State Hospital pending further

8   proceedings.  App. at 012-013.

9       On March 13, 1996, pursuant to a request from DMH, the Sacramento County District

10  Attorney's Office filed a petition in superior court to have petitioner civilly committed as a

11  sexually violent predator under the Act.[2]  App. at 015-019; Cal. Welf. & Inst. Code

12  § 6601(h), (i).  More than a year later,[3] on June 2, 1997, following a seven-day trial, a jury found

13  the allegations in the petition to be true and, on June 9, 1997, petitioner was committed to

14  Atascadero State Hospital for a period of two years.  App. at 42-43, 14; Cal. Welf. & Inst. Code

15  § 6602.  Petitioner's motion for in-custody credits was denied July 25, 1997.  CT at 09.

16      On September 2, 1997, petitioner filed a notice of appeal in the California Court of

17  Appeal, Third Appellate District.  CT at 193-196.  On May 26, 1999, the Court of Appeal

18  affirmed the trial court's order of commitment.  Answer, Exh. 2*.*  Petitioner filed a petition for

19  review in the California Supreme Court, *id.,* Exh. 3, which was denied on November 17, 1999.

20

21      [2] DMH had initially requested, on February 23, 1996, that the Merced County District
    Attorney's Office file the civil commitment petition.  App. at 004.  That office returned

22  petitioner's file on March 8, 1996, because Merced was not the county of petitioner's last
    commitment.  App. at 010; Cal. Welf. & Inst. Code § 6601(h), (i).

23      [3] On April 15, 1996, petitioner waived time and the matter was continued to May 6,
    1996.  On May 6 and June 14, 1996, petitioner agreed to continuances and was ordered detained

24  until trial.  On July 16, 1996, petitioner filed a demurrer to the petition, which was overruled on
    August 12, 1996.  On August 21, 1996, the court found that probable cause existed to sustain the

25  petition and set the matter for trial.  Trial was continued October 1996, and January, February
    and March 1997, and commenced May 19, 1997.  *See* Answer, at 5; Appellee's Ninth Circuit

26  Brief, at 6; CT at 001-008.

1   *Id.,* Exh. 4.

2        On January 11, 1999, petitioner filed a petition for writ of habeas corpus in the

3   California Court of Appeal, Third Appellate District.  *Id.,* Exh. 5. The petition was summarily

4   denied on January 28, 1999, *id.,* Exh. 6, but the parties did not receive notice until March 25,

5   1999.  Petition, Exh. G55.  Petitioner sought unsuccessfully to obtain relief from default in order

6   to file a "petition for review" in the California Supreme Court.[4]  Petition, Exh. G52-57.

7   However, on May 14, 1999, petitioner was permitted to file a petition for writ of habeas corpus

8   in the California Supreme Court, *id.,* Exh. 7 (*see* "Attachment A," explaining delay), which was

9   summarily denied on October 27, 1999.  *Id.,* Exh. 8.

10        Meanwhile, on April 8, 1999, in anticipation of the June 9, 1999, expiration of

11   petitioner's original two-year commitment, Sacramento County filed a petition to extend his

12   commitment for an additional two years.  POB, Exh. 2; Cal. Welf. & Inst. Code § 6604.  On May

13   4, 1999, petitioner signed a waiver relinquishing his right to contest such extension.  POB, Exh.

14   3.[5]  Petitioner's commitment was extended by two years by order filed May 20, 1999.  *Id*., Exh.

15   4.

16        On February 9, 2000–eight months after the expiration of his initial two-year

17   commitment–petitioner filed the instant petition for writ of habeas corpus alleging the state court

18   had been without jurisdiction to commit him under the Act because he was not lawfully in

19

20        [4]  Petitioner explains as follows (Attachment A to Petition, at A1):

21   The Court of Appeal failed to send a copy of the order denying the petition.
     Neither Jackson's counsel nor the Attorney General were ever informed that the
22   petition has been denied until March 25, 1999 when Jackson's counsel received a
     telephone call from the Clerk of the Court of Appeal.  As a result of the Court of
23   Appeal's failure to timely send notice of the denial, Jackson's Petition for Review
     and request for relief from default (Ex. G), sent to this Court on April 1, 1999,
24   were returned un-filed on April 5, 1999 (Ex. H).

25        [5]  The waiver left intact petitioner's "appellate rights in pending Case Number C027457,"
     and "any habeas corpus rights pertaining to my original June 9, 1997, Order of Commitment to
26   the custody of the California State Department of Mental Health."  POB, at 3-4.

1   custody when the petition was filed.  This court denied relief on September 16, 2003, on the

2   ground that petitioner's jurisdictional challenge was limited to construction of state law and

3   therefore not cognizable on federal habeas review.  *See* 28 U.S.C. § 2254(a) ("district court shall

4   entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to

5   the judgment of a State court only on the ground that he is in custody in violation of the

6   Constitution or laws or treaties of the United States").  Judgment was entered, and petitioner

7   appealed.

8        In decisions rendered in February and June 2005, the Ninth Circuit declined to reach the

9   merits of the appeal on the ground that petitioner had failed to establish he had standing to bring

10  this action.  *See Jackson v. California Dept. of Mental Health*, 399 F.3d 1069, 1075 (9th Cir.

11  2005), *as amended on denial of rehearing*, 417 F.3d 1029 (9th Cir. 2005).  Of  particular

12  significance to the Court of Appeal was the fact that petitioner filed the instant petition

13  challenging his *initial* commitment under the Act while serving his *second* term of commitment

14  which, by all appearances, was entered into "*voluntarily*."  The Ninth Circuit remanded the

15  matter to this court with the following instructions:

16       Because Jackson did not demonstrate that he had standing to challenge the state
         court's jurisdiction to order his confinement, the district court lacked jurisdiction
17       to consider his habeas petition.  However, Jackson's failure to allege facts to
         support his standing may well have resulted from the fact that respondents did not
18       contest standing in the district court.  In view of Jackson's claims on appeal
         regarding the circumstances of his voluntary confinement, see note 6 supra,[6] and
19       without deciding whether such claims are sufficient to support standing, we
         remand for the district court to determine, after permitting the parties to address

20

21       [6]  Footnote 6 as set forth in *Jackson*, 399 F.3d at 1075, n. 6, provides:

22       Nor, for that matter, does the record before us reveal any additional information
         that would support Jackson's standing.  At oral argument, Jackson's counsel
23       claimed that Jackson committed himself because he believed challenging a
         second SVPA petition would have been futile and that he would be transferred to
24       jail–where he did not want to go– while an involuntary petition was pending.
         There is no support in the record for either belief.  And even though we asked
25       counsel to submit supplemental briefs addressing jurisdiction, Jackson made no
         effort to explain the circumstances of his voluntary confinement, let alone an offer
26       to expand the record with evidence to support the assertions at oral argument.

1    the issue, whether Jackson has standing to bring this challenge.

2    *Jackson,* 417 F.3d at 1029 (citations omitted).

3         This issue has now been fully briefed by the parties.  Petitioner's requests to expand the

4    record filed October 27, 2005 and July 17, 2007, are hereby granted, and the additional exhibits

5    submitted in response to this court's November 9, 2007, order are also incorporated into the

6    record.  The record now demonstrates that petitioner was recommitted for a third two-year

7    period from June 9, 2001 to June 9, 2003 (pursuant to a petition filed March 22, 2001, waiver of

8    trial executed by petitioner on March 6, 2001 and filed August 1, 2001,[7] and order of the

9    superior court filed August 1, 2001); a fourth two-year period from June 9, 2003 to June 9, 2005

10   (pursuant to a petition filed February 28, 2003, waiver of trial by petitioner's counsel at a

11   hearing May 16, 2003, and order of the superior court filed May 16, 2003); and a fifth two-year

12   period from June 9, 2005 to June 9, 2007 (pursuant to a petition filed March 24, 2005, waiver of

13   personal appearance and to trial filed June 16, 2005, and order of the superior court filed October

14   3, 2005).  POB, at 10-12, and Exh. 2-11; Request to Expand Record filed July 17, 2007, at 1, and

15   Exh. 20; Petitioner's Response to Court's November 8, 2007 Order ("Response"), at 3-4, Exh.

16   21A through 21C.

17        A new petition, filed April 20, 2007, Pet.'s Response, at 4-5, Exh. 21D and 21E, is

18   pending and could result in an indefinite period of commitment pursuant to recent legislation

19   ("S.B. 1128" (2006)) and the passage of Proposition 83 ("Jessica's Law").  As recently

20   recounted and upheld by the Third District Court of Appeal in *Bourquez v. Superior Court,*

21   ___Cal. Rptr. 3d ___,  2007 WL 3361329, *1-*2 (Nov. 14, 2007):

22

23        [7] Although petitioner executed the consent to his third commitment before the petition
     for commitment was filed, this fact is not determinative in assessing the "voluntariness" of that
24   commitment.  Petitioner's consent is identical to the others he signed and provides in pertinent
     part that, at the time he signed the waiver, he had been informed "that an extension of my
25   commitment . . . has been recommended and referred to the Sacramento County District
     Attorney for filing.  I am advised that the Sacramento County District Attorney will file and
26   request a two-year extension pursuant to Welfare and Institutions Code section 6604."  Exh. 3 to
     POB.  The petition was indeed filed, albeit two weeks later.

Under the SVPA, until it was amended in 2006, a person determined to be an SVP was committed to the custody of the Department of Mental Health for a period of two years and was not kept in actual custody for longer than two years unless a new petition to extend the commitment was filed. (Former Welf. & Inst. Code, § 6604; Stats.1995, ch. 763, § 3, p. 5925.)  Former Welfare and Institutions Code section 6604.1 provided when the initial two-year term of commitment and subsequent terms of extended commitment began. (Stats.1998, ch. 19, § 5.)

On September 20, 2006, the Governor signed the Sex Offender Punishment, Control, and Containment Act of 2006, Senate Bill No. 1128 (SB 1128). (Stats. 2006, ch. 337.)  SB 1128 was urgency legislation that went into effect immediately. ( Id., § 62.)  Among other things, it amended provisions of the SVPA to provide the initial commitment set forth in Welfare and Institutions Code section 6604 was for an indeterminate term. ( Id., § 55.)  All references to an extended commitment in sections 6604 and 6604.1 of the Welfare and Institutions Code were deleted. ( Id., §§ 55 & 56.)

. . . At the November 7, 2006 general election, the voters approved Proposition 83, an initiative measure.  (Deering's Ann. Welf. & Inst. Code (2007 supp.) appen. foll. § 6604, p. 43.)  Proposition 83 was known as "The Sexual Predator Punishment and Control Act: Jessica's Law." (Ballot Pamp., Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 127.)  Among other things, Proposition 83 "requires that SVPs be committed by the court to a state mental hospital for an undetermined period of time rather than the renewable two-year commitment provided for under existing law."  ( Id., analysis by the Legislative Analyst, p. 44.)

Proposition 83 amended Welfare and Institutions Code section 6604 in the same manner as SB 1128, changing the term of commitment to an indeterminate term and deleting all references to extended commitments in that section. (Ballot Pamp., Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 137.)  Welfare and Institutions Code section 6604 now provides in part:  "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health."  [¶ ]  Proposition 83 did not amend Welfare and Institutions Code section 6604.1 in exactly the same manner as SB 1128, but retained a reference to extended commitments . . . "

Although the California Supreme Court has yet to address the issue, California's Fourth District Court of Appeal has also upheld an indeterminate SVP commitment.  *See People v. Shields*, 155 Cal. App.4th 559, 65 Cal. Rptr. 3d 922 (Sept. 21, 2007).

The record does not reflect the filing of any waivers or consents by petitioner in response to the currently pending petition.  Petitioner states that "a probable cause hearing was held on this petition on August 17, 2007, and thereafter the case was assigned to Department 60 pending resolution of the case of *Jes Bourquez, et al. v. Superior Court*, No. C055402.  A status

7

conference is set for December 4, 2007 at 8:30 a.m. in Department 60."  Response, at 4 (fn. omitted).  The Third District Court of Appeal's decision in *Bourquez* demonstrates that petitioner's pending SVP petition could result in an indefinite commitment.

## II.

## STANDARDS

### A.    Federal Writs of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).  A state court decision involves an "unreasonable application" of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 412; *see also, Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

**B.    Requirements for Standing**

"Standing is the threshold issue of any federal action, a matter of jurisdiction because 'the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992)). As recently recounted by the Ninth Circuit:

> This principle of justiciability has both constitutional and prudential components. *See* [*Allen v. Wright*, 468 U.S. 737], at 750-51[104 S.Ct. 3315 (1984) (explaining justiciability doctrines)]. . . . Article III standing is a "controlling element[ ] in the definition of a case or controversy." *Hein v. Freedom Religion Found. Inc.*, --- U.S. ----, 127 S.Ct. 2553, 2562 [] (2007) (internal quotation marks omitted). At an "irreducible constitutional minimum," Article III standing requires proof (1) that the plaintiff suffered an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) of a causal connection between that injury and the complained-of conduct; and (3) that a favorable decision will likely redress the alleged injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In addition to these Article III requirements of injury in fact, causation, and redressibility, prudential standing concerns require that we consider, for example, whether the alleged injury is more than a "mere generalized grievance," whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim "falls within the zone of interests to be protected or regulated by the constitutional guarantee in question." *See Johnson v. Stuart*, 702 F.2d 193, 196 (9th Cir.1983) (internal quotation marks omitted).

*Alaska Right to Life Political Action Committee v. Feldman*, 504 F.3d 840, 848-850 (9th Cir. 2007).

**III.    Law of the Case**

"The law of the case doctrine provides that 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the

identical case.' *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir.1997) (internal quotation and citation omitted); *United States v. Miller*, 822 F.2d 828, 832 (9th Cir.1987) ('The rule is that the mandate of an appeals court precludes the district court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal.').  But a court may have discretion to depart from the law of the case if:  1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. *Alexander*, 106 F.3d at 876 [].  A court's '[f]ailure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion.'  *Id*. (citation omitted)." *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998).

        "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'  *Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982).  *Accord Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989).  A significant corollary to the doctrine is that dicta have no preclusive effect.  *Ducey v. United States*, 830 F.2d 1071, 1072 (9th Cir.1987)."  *Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 715 (9th Cir. 1990).

        Accordingly, this court on remand is limited to consideration of the issues left open by the mandate of the appellate court.  *See In re Sanford Fork & Tool Company*, 160 U.S. 247, 255, 16 S.Ct. 291, 293 (1895) (the court on remand "cannot vary [the appellate court's decree], or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded"); *see also Quern v. Jordan*, 440 U.S. 332, 348, n. 18, 99 S.Ct. 1139, 1149 (1979) ("[t]he doctrine of the law of the case comes into play only with respect to issues previously determined"); *Waggoner v. Dallaire*, 767 F.2d 589, 593 (9th Cir. 1985) (court on remand may consider only issues left open by the appellate court's remand order); *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 834 (9th Cir. 1982) (absent applicable law-of-

1   case exception, district court may address only those issues left open for determination); *Lindy*

2   *Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir. 1993) ("[t]he district court must be

3   given a meaningful opportunity to follow the directive of the circuit court in resolving the

4   issues").  To the extent the parties have submitted new and substantially different evidence

5   relative to petitioner's standing, this court may narrowly reconsider the Court of Appeals'

6   pertinent determinations.  *Alexander*, 106 F.3d at 876; *Cuddy*, 147 F.3d at 1114.

### III.

### ANALYSIS

**A.    Remand Mandate as to Standing**

10      The Ninth Circuit's mandate on remand provides that "the district court [shall]

11  determine, after permitting the parties to address the issue, whether Jackson has standing to bring

12  this challenge," 417 F.3d at 1029, that is, "whether Jackson had standing to raise his claim in the

13  first place."  399 F.3d at 1073 (fn. omitted).  The Court of Appeals instructed that to meet the

14  case or controversy requirement of Article III, petitioner must demonstrate the following:  "First,

15  Jackson must have had standing to bring his claim.  In other words, Jackson must have suffered

16  (1) an 'injury in fact' that is (2) 'fairly traceable' to the state court's commitment order that he

17  challenges, and (3) that is 'likely [to be][sic] redressed by a favorable decision.'" *Friends of the*

18  *Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 180-81 [120 S.Ct. 693] (2000).

19  Second, after the case is filed, Jackson must maintain a continuing interest in it to keep the case

20  from becoming moot.  *Id*., at 191-92."  *Jackson,* 399 F.3d at 1071.

21      The *Jackson* court explained:  "[Petitioner] clearly could not rely on his expired SVPA

22  term for standing to raise this claim.  Even if the district court were to agree with him that the

23  state court lacked jurisdiction, it could not remedy an expired commitment term.  Jackson may

24  nonetheless have had standing if the state court's [initial] SVPA commitment order still carried

25  with it "some concrete and continuing injury other than the now-ended incarceration." *Jackson*,

26  ////

399 F.3d at 1073 (citing *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978 (1998)).[8]

This inquiry should be made, said the court, by application of the "collateral consequences doctrine" set forth in *Hubbart v. Knapp*, 379 F.3d 773 (9th Cir. 2004),[9] decided the day the court held oral argument in the instant case.   Although the doctrine was applied to a mootness analysis in *Hubbart*, the *Jackson* court concluded, "There is no conceptual reason why the collateral consequences doctrine should not extend to standing in a case like Jackson's. Continuing effects of Jackson's commitment may be significant enough to satisfy the injury in fact requirement for standing, and a decision invalidating the state court's order would remedy those continuing effects.  [¶] But Jackson must demonstrate that such consequences exist." *Jackson*, 399 F.3d at 1073.

Noting that "[t]he SVPA itself does not provide any statutory disabilities akin to those arising out of a criminal conviction," and the absence of "any other statutes that impose such disabilities on former SVPA confinees," the *Jackson* court opined there may be "other injuries that Jackson suffers or has suffered that might be consequences of the state court's determination

---

[8]  The *Spencer* court required demonstration of specific injurious consequences collateral to parole revocation in order to meet the continuing injury requirement.

[9]  Hubbart filed his federal habeas petition while serving the initial SVPA term he challenged.  However, by the time his petition came to the Ninth Circuit, Hubbart had been recommitted for a second term, and a third petition was pending.  The Ninth Circuit found that Hubbart's challenge to the first petition was not moot "because [Hubbart's] claims are capable of repetition yet evading review.  This well-established exception to mootness applies when '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Hubbart*, 379 F.3d at 777 (quoting *Spencer*, 523 U.S. at 17, 118 S.Ct. 978 (citation and internal quotation marks omitted)).  As the court later explained in *Jackson*, "[t]he harm Hubbart alleged was capable of repetition because he had already been subject to a second commitment proceeding, and a third petition to commit him was pending when we decided the case.  Further, the harm evaded review, as Hubbart's two-year term was so short that he could not pursue his claim through the federal appellate process before the term expired." 399 F.3d at 1072.  The *Jackson* court concluded that "*Hubbart* does not apply here," because Hubbart, unlike Jackson, filed his federal habeas petition before his initial SVPA commitment expired. *Jackson*, 399 F.3d at 1072.  The court explained, "[h]ere . . . [t]he relevant question is not whether Jackson's challenge became moot at some point, but whether he had standing when he brought it." *Id.*

that he is a sexually violent predator:  (1) the voluntary confinement term he was serving when he filed his habeas petition; (2) the possibility that he will be involuntary confined in the future; and (3) the reputational harm associated with the SVPA determination."  *Jackson*, 399 F.3d at 1074.

The court considered each of these potential injuries, categorically rejecting the third: "The Supreme Court has consistently held that reputation is not a sufficient interest to avoid mootness. . . . Any interest that would not be enough to keep the case from becoming moot is necessarily insufficient to confer standing.  Otherwise, the case would immediately be moot. Thus, Jackson did not have standing to challenge the state court's jurisdiction in order to vindicate his reputation."  *Jackson*, 399 F.3d at 1075 (citation and fn. omitted).

Accordingly, this court is directed to consider whether petitioner has standing to pursue the instant habeas petition based upon the collateral consequences of petitioner's initial SVP commitment encompassed by (A) his "current confinement" when he filed the petition and (B) the possibility of future involuntarily confinements.

**1.  "Current Confinement"**

It is now clear that the term of confinement petitioner was serving at the time he filed his habeas petition ("current confinement") was inaccurately characterized by the Court of Appeal as "voluntary."[10]  *Jackson*, 399 F.3d at 1074.  Given the incomplete record the inaccuracy is understandable.  Based on the record then before it, the appeals court found that "[w]hen Jackson's initial SVPA term expired in 1999, the state did not petition to commit him for a second two-year term; he voluntarily recommitted himself."  399 F.3d at 1074.  This mistaken impression led to the court's conclusion that, although petitioner's current confinement was "an injury in fact," it was not "'fairly traceable to the challenged action.'"  *Id*.

---

[10]  The court further commented, erroneously, that petitioner remained confined because he "voluntarily recommitted himself twice more – in 2001 and 2003."  *Jackson*, 399 F.3d at 1074, n. 5.

13

1    This court is mindful of the principles of the law of the case doctrine that now constrains

2    the scope of this court's jurisdiction.  However, the Court of Appeal's specifically instructed this

3    court to ascertain the reasons for petitioner's "voluntary commitment."  As recounted above, the

4    supplemental briefing and expanded record now demonstrate definitely that Sacramento County

5    *did* file a second involuntary commitment petition on April 8, 1999, in anticipation of the June 9,

6    1999 expiration of petitioner's original two-year term.  POB, Exh. 2.  Thus, in response to the

7    Court of Appeal's instruction this court ascertain the reasons for petitioner's "voluntary

8    commitment," it is reasonable to infer petitioner waived his right to challenge the second petition

9    because he stood little chance of defeating it.

10    The Court of Appeals allowed that it might find, on less persuasive facts, that petitioner's

11    "current confinement" was "fairly traceable" to his initial confinement:  "It is possible that

12    Jackson committed himself because the state would otherwise have asked a court to recommit

13    him involuntarily.  If he stood little chance of defeating such a request, but would incur some

14    hardship in trying, perhaps we would be willing to say that his decision to voluntarily recommit

15    himself was traceable to the state court's initial decision to confine him."  *Jackson*, 399 F.3d at

16    1074.  The present facts are more persuasive because petitioner was not merely threatened with

17    the filing of an involuntary recommitment petition but such petition had already been filed.

18    Petitioner's "current confinement" at the time he filed his habeas petition, pursuant to an

19    involuntary recommitment petition, was therefore "fairly traceable" to the initial commitment he

20    challenged.

21    Additionally, a favorable decision upholding petitioner's challenge to his initial SVP

22    commitment would redress the injury of his continuing confinement.  Petitioner's consecutive

23    commitments are but a "continuing effect" of his initial injury, a "continuing injury."  Having

24    found petitioner's "current confinement" an "injury in fact" "fairly traceable" to his initial

25    involuntary commitment, that is "likely to be redressed by a favorable decision," *Jackson*, 399

26    F.3d at 1071 (quoting *Friends of the Earth*, 528 U.S. at 180-81), it is reasonable to conclude that

1  petitioner's "current confinement" conferred upon him standing to challenge his initial

2  commitment.  This conclusion is reenforced by, and merges with, the following discussion

3  concerning the possibility of "future involuntary commitments."

4       2. **Possibility of Future Confinement**

5       The Court of Appeals opined that, *if* all of petitioner's confinements were attained

6  pursuant to involuntary commitment petitions, all subsequent petitions and confinements could

7  be traced back to his initial involuntary petition and confinement.  The court distinguished the

8  present case, incorrectly, on the ground that petitioner broke what otherwise would have been a

9  "chain" of involuntary commitments by voluntarily committing himself to his second (and

10 subsequent) SVPA term(s).  The court hypothesized:  "Another possibility is that Jackson had

11 standing because he might in the future be confined involuntarily.  If Jackson had never

12 voluntarily recommitted himself, but had instead been committed under successive SVPA

13 petitions, his initial SVPA confinement would have served as a prerequisite for a second petition,

14 the second petition as a prerequisite for a third, and so forth.  Thus, any future petition to

15 recommit him could be traced back, through preceding petitions, to his initial confinement."

16 *Jackson*, 399 F.3d at 1075.

17      The "chain" of involuntary commitments has not been broken in this case.

18 Each of petitioner's terms of confinement was in response to a petition for involuntary

19 commitment, and the possibility of future involuntary commitments remains.  The Ninth Circuit

20 has acknowledged that this scenario is sufficient to confer standing in this case, as stated in

21 *Huftile v. L C Miccio-Fonseca*, 410 F.3d 1136, 1142 (9th Cir. 2005):

22      Huftile still has standing to bring a federal habeas petition challenging his initial
        SVPA commitment even if the term of that commitment has expired.[11]  In
23      *Jackson v. California Department of Mental Health*, 399 F.3d 1069 (9th
        Cir.2005), we considered the case of an SVPA detainee whose initial term expired
24      before he filed a federal habeas petition.  Jackson's standing was in doubt because
        his continuing confinement was due to his voluntary recommitment after his

25

26      [11]  Huftile's case was originally brought as a § 1983 action.

1    initial term had expired.  We noted, however, that the standing analysis would be
2    different if Jackson had not voluntarily recommitted himself.  Had Jackson
     instead been involuntarily committed under successive SVPA petitions, "any
3    future petition to recommit him could be traced back, through preceding petitions,
     to his initial confinement" because "his initial SVPA confinement would have
4    served as a prerequisite for a second petition, the second petition as a prerequisite
     for a third, and so forth."  *Id*.  This is Huftile's case.  Under California's SVPA
5    scheme, the current petition to recommit Huftile is directly traceable to his initial
     term of confinement and is thereby sufficient to confer standing for federal habeas
6    purposes.

7         Accordingly, this court finds that the possibility petitioner may continue to be

8    involuntarily confined in the future perpetuates an ongoing "injury" that is "fairly traceable" to

9    his initial involuntary commitment and "likely to be redressed by a favorable decision." *Jackson*,

10   399 F.3d at 1071 (quoting *Friends of the Earth*, 528 U.S. at 180-81).  This "chain" of

11   involuntary commitments confers uninterrupted standing upon petitioner to challenge his initial

12   involuntary commitment.  *Accord Carmony v. Hunter*, 2006 WL 3762110, *4-*5 (E.D. Cal.

13   2006), *adopted in full*, 2007 WL 2904090 (E.D. Cal. 2007) (petitioner had standing to file and

14   pursue federal habeas petition challenging his initial, although expired, SVP commitment

15   because his continuing incarceration was an "injury in fact" "directly traceable" to the initial

16   commitment; distinguishing *Jackson* due to his "voluntary commitment").

17   **B.    Petitioner's Habeas Petition is Not Moot**

18        Petitioner has met both prongs of Article III's case or controversy requirement.  In

19   addition to meeting the standing prerequisites, petitioner's challenge to his initial SVPA

20   commitment is not moot because petitioner has maintained a "continuing interest" in the matter

21   by virtue of his ongoing incarceration and possibility of future involuntary confinement, which

22   could now be indefinite.  *Accord Carmony v. Hunter*, *supra*, 2006 WL 3762110, at *4 (federal

23   habeas petition challenging initial SVP commitment was not moot although filed after the

24   expiration of that term because petitioner's continuing incarceration rendered his claims capable

25   of repetition but evading review); *see also Hubbart*, 379 F.3d at 777-778 (subsequent

26   recommitment proceedings, although separate and distinct civil actions, do not render moot a

16

1  challenge to the first commitment proceeding); *Rose v. Mayberg*, 454 F.3d 958, 960 (9th Cir.

2  2006) (challenge of initial SVPA commitment was not rendered moot by subsequent

3  commitments because the latter "depended on the legality" of the first).

4       Further, even if petitioner were released, the post-release reporting requirements

5  discussed below impose a significant collateral consequence resulting from his initial (and

6  subsequent) SVP commitment(s), a matter of "continuing interest" foreclosing mootness.

7  **C.     Respondents' Concession to Standing Pursuant to *Carty v. Nelson***

8       Respondents concede that petitioner has standing based on the Ninth Circuit's post-

9  *Jackson* decision in *Carty v. Nelson*, 426 F.3d 1064 (9th Cir. 2005), *as amended*, 431 F.3d 1185

10  (9th Cir. 2005).  Respondents' Brief on Standing ("RBS"), at 5; Respondents' Reply filed Nov.

11  19, 2007, at 2.  The *Carty* analysis articulates independent collateral consequences associated

12  with an SVP adjudication but is grounded in mootness, not standing.

13       In *Carty*, the Ninth Circuit denied petitioner's habeas petition on the merits after

14  concluding it was not moot.  Carty's petition challenged his initial SVP commitment and was

15  apparently filed while Carty was serving that commitment.[12]  Carty was released pursuant to a

16  third commitment proceeding while his petition was on appeal.  Despite Carty's release, the

17  Ninth Circuit found that his petition was not moot because it met the Article III requirement

18  "that, *through all stages* of federal judicial proceedings, the parties continue to have a personal

19  stake in the outcome of the lawsuit.  This means that, *throughout the litigation*, the plaintiff must

20  have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be

21  

22       [12]  These facts are stated inconsistently in the opinion.  It initially states that Carty filed
his habeas petition while serving his second term:  "In April 2003, while Carty was serving his
second term, Carty filed a pro se habeas petition under 28 U.S.C. § 2254 in federal district court

23  challenging his initial June 1999 civil commitment."  *Carty*, 426 F.3d at 1066.  However, the
opinion later states that Carty filed his federal habeas petition while serving his initial term:  "On

24  April 23, 2001, while Carty was serving his initial two year term imposed by the San Diego
Superior Court in June 1999, he filed a pro se federal habeas petition, challenging his June 1999

25  civil commitment."  *Id*. at 1069-1070.  Since it does not appear that Carty filed two separate
habeas petitions, these facts remain inconsistent and therefore inapposite to the standing issue

26  presented in the instant case.

redressed by a favorable judicial decision." *Carty*, 426 F.3d at 1071 (emphasis added) (paraphrasing *Caswell v. Calderon*, 363 F.3d 832, 836 (9th Cir. 2004), and citing *Spencer v. Kemna*, *supra*, 523 U.S. at 7 ("[u]pon release, 'some concrete and continuing injury other than the now-ended incarceration or parole – some "collateral consequence" of the conviction – must exist if the suit is to be maintained'")).

The court found that a significant "collateral consequence" of an SVP adjudication is the statutory requirement that the individual, upon release, verify his or her address and place of employment every ninety days with the California Department of Justice; failure to meet this requirement renders the individual subject to incarceration for a period of up to one year.  Cal. Penal Code § 290 (a)(1)(E), and (g)(5).[13]  The court concluded that this consequence was a "concrete and continuing injury sufficient to satisfy Article III's case or controversy requirement."[14]  *Carty*, 426 F.3d at 1071-1072.  Accordingly, the court found that Carty's

---

[13]  California Penal Code § 290 (a)(1)(E) (2005 to present) provides in pertinent part:

"[E]very person who has ever been adjudicated a sexually violent predator, as defined in Section 6600 of the Welfare and Institutions Code, shall, after his or her release from custody, verify his or her address no less than once every 90 days and place of employment, including the name and address of the employer, in a manner established by the Department of Justice."

 California Penal Code § 290 (g)(5) (2005 to present) provides:

 "Any person who has ever been adjudicated a sexually violent predator, as defined in Section 6600 of the Welfare and Institutions Code, and who fails to verify his or her registration every 90 days as required pursuant to subparagraph (E) of paragraph (1) of subdivision (a), shall be punished by imprisonment in the state prison, or in a county jail not exceeding one year."

The requirement that a sexually violent predator who has been released verify his or her address every 90 days was added in 1997 (Stats. 1997, ch. 821, § 3.5); the requirement that his or her place of employment also be verified every 90 days was added in 1999 (Stats. 1999, ch. 901, § 1.5).

[14]  The *Carty* court cited *Jackson* for the principle that "the continuing effects of commitment may be significant enough to satisfy the injury in fact requirement for standing, and a decision invalidating the state court's order would remedy those continuing effects."  *Carty*, 426 F.3d at 1071 (citing *Jackson*, 399 F.3d at 1073).

1   petition was not moot because, despite his release, a meritorious challenge would relieve Carty

2   from the requirement of meeting the SVPA reporting requirements.[15],[16] *Id.*

3         Although grounded in a mootness analysis, the SVPA reporting requirements recognized

4   by *Carty* are additional "collateral consequences" supporting the *Jackson* standing analysis.

5   Accordingly, although *Carty* is not directly on point, it buttresses this court's finding petitioner

6   has standing to challenge his initial SVP commitment.

7                                                                   **IV.**

8                                   **CONCLUSION**

9         For all the foregoing, the court hereby ORDERS that petitioner's requests to expand the

10   record filed October 27, 2005 and July 17, 2007, are GRANTED.

11         Further, it is hereby RECOMMENDED that the court find petitioner has standing to

12   pursue his federal habeas petition.

13         These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days

15   after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

18

19        [15]  The *Carty* court also opined that any constitutional defect in Carty's initial
20   commitment would necessarily have "tainted" his subsequent re-commitment proceedings, thus
     allowing him to challenge his second commitment on the same grounds as he challenged his
21   initial commitment. Although the court's discussion focused on Carty's contention the District
     Attorney was not required to re-prove, at the second commitment proceeding, the finding of the
22   first proceeding that Carty perpetrated "substantial sexual conduct" on child victims and
     therefore the trial court's reliance on this finding in the second proceeding would perpetuate any
23   constitutional defect of the initial finding, the "tainting" concept holds true for the perpetuation
     of any significant defect in sequential SVPA commitment proceedings.

24        [16]  The court distinguished its mootness analysis in *Hubbart, supra,* 379 F.3d 773, on the
     ground that Hubbart's ongoing confinement rendered the challenge to his initial commitment
25   capable of repetition yet evading review; however, in *Carty,* where recommitment was no longer
     a possibility, the court's mootness analysis was limited to whether it could grant any meaningful
26   relief.

1  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:   December 18, 2007.

4

5                                        EDMUND F. BRENNAN
                                         UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26